# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**PATRICIA M.,**

       **Plaintiff,**

                    **Case No. 3:19-cv-17087**

   **v.**                     **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Patricia M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.     PROCEDURAL HISTORY

On March 11, 2016, Plaintiff filed an application for benefits, alleging that she has been disabled since June 30, 2015. R. 181−87. The application was denied initially and upon reconsideration. R. 85−97, 99−114, 118−22, 124−26. Plaintiff sought a *de novo* hearing before

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

an administrative law judge. R. 127–28. Administrative Law Judge Lisa Hibner ("ALJ") held a

hearing on July 17, 2018, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 32–84. In a decision dated September 19, 2018, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act from June 30, 2015, the

alleged disability onset date, through the date of the decision. R. 16–25. That decision became

the final decision of the Commissioner of Social Security when the Appeals Council declined

review on July 1, 2019. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g).

ECF No. 1. On August 20, 2020, Plaintiff consented to disposition of the matter by a United

States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 14.[2] On that same day, the case was reassigned to the undersigned. ECF

No. 16. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 61 years old on her alleged disability onset date, June 30, 2015. R. 85. She met the insured status requirements of the Social Security Act through March 31, 2020. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 30, 2015, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease; status-post left total hip arthroplasty; degenerative joint disease of the left knee; and bilateral carpal tunnel syndrome. R. 19. The ALJ also found that Plaintiff's diagnosed impairments of focal epilepsy and a history of coronary artery disease and Plaintiff's alleged impairment of fibromyalgia were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 20.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to certain additional limitations. R. 21–24. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a sales representative. R. 24–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 30, 2015, her alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 9. The Commissioner takes the position that her decision should be affirmed in its entirety because

the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 12.

## IV. DISCUSSION

### A. RFC

Plaintiff argues that the ALJ failed to properly consider the physical limitations found by her treating physician, Anoop Porwal, M.D. *Plaintiff's Brief*, ECF No. 9, pp. 16−29. This failure on the part of the ALJ, Plaintiff goes on to argue, resulted in an RFC that is not supported by substantial evidence. *Id*.

A claimant's RFC is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except she can only stand/walk for 4 hours and sit for 6 hours; occasionally stoop, kneel, crouch or crawl; and frequently reach overhead, finger and handle." R. 21. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, a left total hip arthroplasty in January 2016; Plaintiff's February 2016 report that she was doing well with minimal pain upon ambulation and minimal swelling and discomfort; her report that same month of greatly decreased left hip pain and demonstrated good range of motion during a visit with Dr. Porwal; the September 2016 notation that Plaintiff was doing "excellent" in connection with her left hip; a September 2016 injection for right trochanteric bursitis following her report of right hip discomfort; an April 2018 notation that she had intact range of motion of the hips without pain. R. 22. Plaintiff also began pain management with Dr. Porwal in January 2016, at which time she reported chronic low back pain with left hip and left knee pain and symptoms of left lumbar radiculopathy; Dr. Porwal administered an epidural steroid injection, which provided good relief. R. 23. In February 2016, Plaintiff started physical therapy for low back pain and also started seeing an orthopedist, Natacha S. Falcon, D.O., for her back pain; Plaintiff reported mild back pain with left radicular symptoms with occasional numbness, tingling and pain in the left lower extremity at that time, but she also indicated that Lyrica and Flexeril helped with pain and muscle spasms. *Id*. After an x-ray showed moderately severe narrowing of the lateral joint space in the left knee, Dr. Porwal administered hyalgan injections in February 2016 to Plaintiff's left knee, the first of which worked pretty well; by March 2016, Plaintiff reported to Dr. Porwal an increased range of motion to the left knee along with decreased pain, an ability to ambulate better and perform activities of daily living with less difficulty and pain; an MRI of the lumbar spine was consistent with degenerative disc disease and Plaintiff rated her pain as a 3/10, noting

that she was feeling much better with only intermittent back pain with radiation into her left side; Plaintiff also reported improvement in numbness and tingling in her right lower extremity. R. 22–23. In May 2016, Plaintiff reported right shoulder pain to Dr. Porwal. R. 23.

Plaintiff also underwent a consultative examination, performed by Ronald Bagner, M.D., that same month. She ambulated at a reasonable pace with a left limp, but did not use a cane or crutches; she had no difficulty getting on/off the examining table or getting dressed/undressed. R. 24. There was decreased range of motion of the back and pain on straight leg raise on the left referable to the left hip, no sensory abnormality in the lower extremities and normal range of movement of the left hip despite complaints of pain, and normal range of motion of the left knee with no evidence of instability or localized tenderness. *Id*.

In a September 2016 visit to Dr. Falcon, Plaintiff rated her pain as 4-5/10 with only intermittent radicular symptoms. An October 2016 MRI revealed only small disc osteophyte complex at L3-S1 with mild central stenosis; she rated her pain at that time as 3/10. R. 23. In December 2016, March 2017 and November 2017, Plaintiff complained to Dr. Porwal of neck pain radiating into her shoulders and left sided low back pain; her low back pain symptoms were stable. *Id.* In a visit with Dr. Falcon in April 2018, Plaintiff rated her pain as 6/10 and reported significant left buttock pain; however, she had a stable gait and was able to ambulate on her heels and toes and tandem walk without difficulty; her lumbar range of motion was intact without pain. *Id.*

In June 2016, EMG/NCV testing was consistent with severe right carpal tunnel syndrome and mild to moderate carpal tunnel syndrome on the left. A cortisone injection was administered in July 2016 and March 2017. In November 2017, Plaintiff reported worsening pain, numbness and tingling bilaterally and, in January 2018, Plaintiff underwent a right carpal tunnel release.

Shortly thereafter, Plaintiff reported that she was doing well and had only minimal pain. *Id.* As this recitation makes clear, the ALJ properly relied on record evidence, and not merely on her own lay opinion as Plaintiff suggests, *see Plaintiff's Brief*, ECF No. 9, pp. 22−23, 28, when assessing Plaintiff's RFC. *See Chandler*, 667 F.3d at 361 (stating that the ALJ makes the ultimate disability and RFC determinations). In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

The ALJ assigned "great weight" to Dr. Falcon's opinion that Plaintiff's left-sided sciatica was not disabling since she was able to return to work in February 2016. The ALJ also assigned "great weight" to the reviewing state agency physicians who agreed that Plaintiff is capable of light exertional work, except that she can stand/walk only for four hours and is subject to certain additional postural limitations. R. 22−24. Plaintiff argues, however, that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Porwal, when crafting the RFC. *Plaintiff's Brief*, ECF No. 9, pp. 16−29. This Court disagrees. The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record

consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship

and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

On April 12, 2016, Dr. Porwal, Plaintiff's treating physician, completed a four-page report, consisting primarily of fill-in-the-blank and check-the-box information. R. 365–68. Asked to identify his specialty, Dr. Porwal reported "Physical Medicine and Rehabilitation." R. 365. Dr. Porwal noted he had seen Plaintiff on a weekly basis beginning on January 12, 2016, with the most recent visit (as of the time the report was completed) on March 16, 2016. R. 365–66. Dr. Porwal noted Plaintiff's history of low back pain with left lumbar radiculopathy, status post recent left total hip arthroplasty, and a series of five injections in the left knee for advanced osteoarthritis of the left knee. R. 366. Plaintiff's physical findings included left knee detection of

compartment tenderness, crepitus and mild hypertrophies, lumbar paraspinal tenderness (left greater than right), left lumbar radicular symptoms radiating to the left leg, and right ankle dorsal pain, as possible degenerative joint disease. *Id*. Dr. Porwal diagnosed ligament sprain of the lumbar spine, intervertebral disc degeneration of the lumbar region, unilateral primary osteoarthritis of the left knee, and a left artificial hip joint. *Id*. According to Dr. Porwal, Plaintiff could lift and carry no more than ten pounds and could stand/walk for less than two hours and sit for less than six hours (no more than one hour at a time) in an eight-hour work day. R. 367. Dr. Porwal also opined that Plaintiff was limited in traveling and in handling objects because of her bilateral carpal tunnel conditions. *Id*.

The ALJ assigned these opinions of Dr. Porwal "little weight," reasoning as follows:

> In connection with his treatment of the claimant, Anoop Porwal, M.D., opined that the claimant is limited to lifting/carrying less than 10 pounds; can only stand for less than 2 hours per day; cannot sit for more than 1 hour; and is limited in her ability to travel and handle due to carpal tunnel (Exhibit 3F, page 3 [R. 367]). The undersigned accords little weight to Dr. Porwal's opinion, as it is inconsistent with his treatment of the claimant, which consisted of injections, which admittedly provided relief (Exhibits 12F [R. 459–85] & 24F [R. 787–834]).

R. 23. The Court sees no error in the ALJ's reasoning in this regard.

Plaintiff, however, challenges this evaluation, arguing that the ALJ "gave no obvious consideration" to the factors outlined in 20 C.F.R. § 404.1527(c) when she assessed Dr. Porwal's opinion. *Plaintiff's Brief*, ECF No. 9, pp. 21–24, 27–28. Plaintiff's argument is not well taken. As a preliminary matter, "[a]n ALJ need not explicitly discuss each factor in his [or her] decision." *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *6 (D.N.J. Jan. 31, 2019); *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) (same) (collecting cases). "Instead, an ALJ need only 'explain his [or her] evaluation of the medical evidence for the district court to meaningfully review whether his [or

her] reasoning accords with the regulation's standards.'" *Samah*, 2018 WL 6178862, at *5

(quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21,

2015)); *see also Jones*, 364 F.3d at 505 (stating that the ALJ is not required to "use particular

language or adhere to a particular format in conducting his analysis" and instead must only

"ensure that there is sufficient development of the record and explanation of findings to permit

meaningful review"); *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019)

("Although the ALJ did not specifically identify each factor [under 20 C.F.R. § 404.1527(c)], all

relevant factors were considered throughout the lengthy, detailed opinion.") (citations omitted).

The ALJ did just that in this case. Although the ALJ did not explicitly go through a factor-by-

factor analysis, she specifically considered Dr. Porwal's numerous examinations of Plaintiff in

2016 and 2017, and factored in Dr. Porwal's treating relationship with Plaintiff when she

explained the weight that she assigned to the doctor's opinions. *See* R. 22–23 (citing Exhibits

12F, 21F, 23F, detailing examinations from 2016 through 2017, and acknowledging that Dr.

Porwal's opinion was "[w]as in connection with his treatment with Plaintiff" when deciding

what weight to accord his opinion); *see also* 20 C.F.R. § 404.1527(c)(1), (2). In addition, as

detailed above, the ALJ explained that she discounted Dr. Porwal's opinion because it was

inconsistent with his treatment of Plaintiff, which consisted of injections and which admittedly

provided Plaintiff relief. R. 22–23; *see also* 20 C.F.R. §§ 404.1527(c)(3), (4); *Kiefer v. Saul*, No.

CV 19-547, 2020 WL 1905031, at *3 (W.D. Pa. Apr. 17, 2020) (finding that the ALJ gave "valid

and acceptable reasons for discounting the weight accorded" to treating opinion because those

opinions were, *inter alia*, "inconsistent with the conservative approach to her treatment") (citing

20 C.F.R. §§ 404.1527, 416.927); *cf. Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d

Cir. 2020) (finding that the "ALJ adequately evaluated the opinions from [the claimant's]

treating physicians and put forth sound reasons supported by substantial evidence" where the ALJ assigned only partial weight to a treating physician whose conservative course of treatment (ibuprofen) did not support absences from work twice a month); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy").

Plaintiff also complains that, although the "ALJ did acknowledge in her summary of the evidence that Plaintiff began pain management with Dr. Porwal in in January 2016," the ALJ "failed to give any indication she recognized the significance of this or factored it into her weighing of his opinion." *Plaintiff's Brief*, ECF No. 9, p. 22 (citing 20 C.F.R. § 404.1527(c)(5)). However, as Plaintiff concedes, the ALJ explicitly considered Dr. Porwal's pain management treatment. *Id.* Moreover, the ALJ also explicitly considered Dr. Porwal's April 2016 opinion, which expressly identified his specialty. R. 23, 365. In any event, even if the ALJ erred by not expressly considering Dr. Porwal's area of specialization, any such error was harmless. Plaintiff has not explained how consideration of this specialty would have changed the weight given to Dr. Porwal's opinion in light of the fact that his extreme opinion was inconsistent with his own records reflecting conservative treatment with injections—treatment that successfully provided relief to Plaintiff. *Plaintiff's Brief*, ECF No. 9, p. 22; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Fuehrer v. Saul*, No. CV 16-5248, 2019 WL 5550634, at *5 (E.D. Pa. Oct. 28, 2019) ("Here, too, any error by the ALJ in failing to explicitly address the factors [under 20 C.F.R. §§ 404.1527(c), 416.927(c)] cited by Plaintiff is harmless, as Plaintiff has not shown how consideration of these factors would have affected his evaluation of

either opinion, given his conclusion that the opinions were inconsistent with the physicians' own treatment notes.") (collecting cases).

Plaintiff goes on to argue that the ALJ erred when assigning "great weight" to the opinions of reviewing the state agency physicians and to Dr. Falcon because these physicians did not have "access to the entire record that demonstrated significant progression of her impairments." *Plaintiff's Brief*, ECF No. 9, p. 25–26. Plaintiff further complains that the reports of non-examining physicians are generally accorded less weight than those of examining and treating physicians. *Id.* at 26–27 (citing, *inter alia*, *Nazario*, 794 F. App'x 204). Plaintiff also notes that "Dr. Porwal has an extensive treatment history with Plaintiff, beginning in January 2016 with approximately 24 visits through April 2018, as opposed to Dr. Falcon's 5 treatments in 2016." *Id.* at 27.

Plaintiff's arguments are not well taken. As a preliminary matter, state agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ

is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Accordingly, here, the ALJ did not err when assigning great weight to the reviewing state agency physicians' opinions issued in June and August 2016 simply because additional medical evidence was later submitted. *See id*. Notably, Plaintiff fails to explain how Dr. Porwal's extreme opinion, which was inconsistent with his own conservative treatment of Plaintiff, or any other specific medical evidence later submitted, supports her argument in this regard. *See Plaintiff's Brief*, ECF No. 9, pp. 25–27; *see also Shinseki*, 556 U.S. at 409–10. Moreover, "[s]imply because these opinions were rendered by state agency physicians who did not have a treating relationship with Plaintiff does not, as discussed in the aforementioned precedent, mean that the ALJ could not give them significant weight[.]" *Jones v. Colvin*, No. 3:14-CV-2337, 2016 WL 1071021, at *12 (M.D. Pa. Mar. 17, 2016); *cf. Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration"). Finally, while Plaintiff apparently asserts that the ALJ erred in assigning more weight to Dr. Falcon's opinion than she did to Dr. Porwal's opinion, Plaintiff has not explained why the ALJ erred in crediting Dr. Falcon's opinion that Plaintiff's "left-sided sciatica was not disabling, as she was able to return to work in February 2016[,]" R. 23. *See Plaintiff's Brief*, ECF No. 9, p. 27. The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *Cf. Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).

Plaintiff also contends that the ALJ erred in evaluating her subjective complaints when crafting the RFC. *Plaintiff's Brief*, ECF No. 9, pp. 29–31. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received

for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[3]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 22, 24. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 22. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings. R. 22–24. The ALJ also considered Plaintiff's statements and testimony regarding her activities:

> [Plaintiff] also endorsed difficulty remembering things, but indicated that she has no difficulty following instructions (Exhibit 4E, page 6). Despite her allegations, she takes care of her husband, who is disabled, drives locally, performs household chores, such as laundry and making her bed, grocery shops and prepares light meals (*See also Id*. at 3-4). She also uses a smart phone to keep up with family and friends and can attend to her personal care (*See also Id*.). Additionally, she attends church weekly and eats out a couple times a week. When questioned whether she has gone

---

[3]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

on vacation, she denied the same. However, she admitted that she went to Canada for approximately four days in 2016 for her anniversary. She also admitted that she went to Myrtle Beach in 2017. She apparently goes there once a year for a week because she has a timeshare.

R. 21–22. The ALJ specifically noted that Plaintiff testified that "she was laid off from her job on the alleged onset date after the company that she was working for was bought by another company. Thereafter, she collected unemployment benefits (*See also* Exhibit 8D) and admittedly looked for work. Currently, she receives retirement benefits." R. 22. After considering all the evidence, the ALJ evaluated Plaintiff's subjective complaints, as follows:

> Upon consideration of the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some symptoms. However, having considered the entire evidence of record and the criteria of SSR 96-7p and 20 CFR 404.1529, the undersigned finds that the claimant's statements that she is unable to work are not supported and are not consistent in light of the discrepancies between the claimant's assertions, testimony, and medical record. The record shows that the treatment the claimant has received has been effective. She underwent surgery to her left hip, which improved her pain. She also underwent right carpal tunnel surgery, which was successful. Moreover, treatment for left knee and low back pain has been routine and conservative, consisting mainly of injections and the use of medications, both of which have been effective in relieving her pain. Therefore, the evidence fails to substantiate the claimant's allegations of debilitating limitations. Accordingly, the undersigned finds that the claimant's testimony and allegations are not fully consistent with the evidence of record.

R. 24. The ALJ therefore concluded that "[t]he claimant has a lot of complaints, but there is little objective evidence to support those complaints." *Id*. In the view of this Court, the record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff insists that the ALJ also erred in failing to properly consider Plaintiff's "stellar work history of earning 167 out of 176 quarters between 1872 and 2015, with earnings close to or over six figures for the 14 years prior to her alleged onset date." *Plaintiff's Brief*, ECF No. 9,

p. 30. Plaintiff goes on to argue that an ALJ is required to consider a claimant's exemplary work history when assessing subjective complaints. *Id.* at 30–31 (citing, *inter alia*, 20 C.F.R. § 404.1529(c)(3); SSR 96-8p; SSR 16-3p). The Court is not persuaded that this issue requires remand. The Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Gulin v. Comm'r of Soc. Sec.*, No. CIV.A. 13-01897, 2014 WL 1466488, at *14 (D.N.J. Apr. 14, 2014) (finding that "the ALJ properly evaluated Plaintiff's credibility based on the entire record, including the available objective medical evidence" and that the ALJ "did not entirely ignore Plaintiff's work history. While she did not explicitly state that Plaintiff had worked for the NJDOT for twenty-three years, she did note that Plaintiff had worked for the NJDOT and that he took a medical retirement"); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. The ALJ specifically considered, *inter alia*, that Plaintiff was laid off from her job on her alleged disability onset date, that she collected unemployment benefits, and that she currently receives retirement benefits. R. 21–22, 24. Accordingly, the Court finds that the ALJ sufficiently explained her reasoning in evaluating Plaintiff's subjective complaints; the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See id.*; SSR 16-3p;

*Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## V.      CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 16, 2021                                  *s/Norah McCann King*
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE